JASTERBOWSKI, APPELLEE, *v.* MICHOS, APPELLANT.

[Cite as Jasterbowski v. Michos (1975), 44 Ohio App. 2d 201.]

(No. 33754—Decided May 29, 1975.)

*Mr. Jerome Silver,* for appellee.
*Mr. David N. Patterson,* for appellant.

DAY, J. On January 14, 1972, the plaintiff-appellee (plaintiff) filed a complaint in the Cuyahoga County Common Pleas Court against the defendant-appellant (defendant). The complaint contained two causes of action, one for alienation of affections and the other for criminal conversation. In substance, the plaintiff alleged in his complaint that the defendant, Leo Michos, had pursued a course of conduct intended to estrange his (plaintiff's) wife and alienate her affections from him, and that, secondly, the defendant had committed adultery with his wife. The plaintiff prayed for $250,000 in compensatory and punitive damages on the alienation of affections cause of action, and for $250,000 in damages for criminal conversation.

On January 28, 1972, the defendant filed an answer to the plaintiff's complaint in which he denied all substantive matters that the plaintiff had alleged. Prior to trial, the

plaintiff requested and received permission from the trial court to dismiss the cause of action for alienation of affections. Also prior to the commencement of trial, the plaintiff requested and received permission from the trial court, over objection of the defendant's attorney, to add $250,-000 as punitive damages to the prayer of the remaining cause of action for criminal conversation. The plaintiff's wife left him on August 29, 1970 (Tr. 21-24). Defendant concedes that he had sexual relations with the wife in June of 1971 and after (Tr.12), while she was still married to the plaintiff (Tr. 163-164).

A jury trial was conducted on May 9, 10, and 13, 1974. At the conclusion of the trial, on May 13, 1974, the jury returned a verdict for the plaintiff in the sum of $15,000 compensatory damages and $5,000 punitive damages. On June 5, 1974, the defendant filed a notice of appeal from the judgment entered pursuant to the jury's verdict. In his appeal, the defendant assigns seven errors:

"I. The verdict of the jury for $15,000.00 compensatory damages was excessive and manifestly against the weight of the evidence.

"II. The trial court made reversible error in allowing the plaintiff to amend his demand for relief in his complaint over objection of counsel at the time of trial.

"III. The trial court made reversible error in its instructions to the jury as to the amount of compensatory damages.

"IV. The trial court made reversible error in that the judge intimidated the jury in the remarks he made to the defendant while on the witness stand.

"V. The trial court made reversible error allowing into evidence material that was irrelevant, immaterial and incompetent.

"VI. The verdict of the jury for $5,000.00 punitive damages was excessive and manifestly against the weight of the evidence.

"VII. The trial court committed prejudicial error by excluding evidence in mitigation of damages."

We reverse and remand for a new trial on the issues

of compensatory and punitive damages. However, pursuant to the obligation under App. R. 12 the remaining assignments of error also are addressed. The reasons supporting the respective dispositions are assessed below.

Assignment of Error No. I:

"The verdict of the jury for $15,000.00 compensatory damages was excessive and manifestly against the weight of the evidence."

The evidence of compensatory damages was confined solely to the testimony of the plaintiff and a series of lay witnesses. The only evidence reaching the issue of a causal connection between the damages and the criminal conversation was the plaintiff's testimony that he was "upset," "very upset" (Tr. 55, 71), "always nervous, I was a wreck at the time. I couldn't stand still, I couldn't do anything" (Tr. 55), "shocked," "paralyzed", "didn't know what to think" (Tr. 59), that he went to see doctors "about eight months after all this happened" (Tr. 71) that he was "nervous", "out of control", "a wreck" (Tr. 71), and "paralyzed" (Tr. 72). One physician was seen once (Tr. 72). Another gave the plaintiff medication and sleeping pills but it was not established how many times the medicating doctor was seen although the record will bear the inference that it was more than once (Tr. 72). Lay witnesses (two sons, a friend, and the brother of the plaintiff) generally corroborated his description of his "upset" condition (Tr. 26, 44-45, 53, 114), and one son said plaintiff "was drinking" (Tr. 26), and that he saw his father intoxicated after the wife left the house in August of 1970 (Tr. 35). The same son testified that both his father and the wife drank before the wife left (Tr. 36). No medical witness testified.

This court has recently stated the applicable standard for compensatory damages in a criminal conversation case:

'Compenstory damages in a criminal conversation case are not determined by the number of illicit affairs or what these affairs should cost the defendant, but what will compensate the plaintiff for his damage. The general rule for compensatory damages is that the injury, and the damages resulting, must be shown with certainty, and not left

to conjecture or speculation. While in an action for criminal conversation the violation of the marriage rights is sufficient to justify an allowance of at least nominal damages without a showing of pecuniary damages, there must be sufficient evidence of actual damages to permit any more than a nominal amount. . . .'' *Swartz* v. *Steele* (1974), 71 Ohio Op. 2d 46, 48.

That there was some damage is uncontroverted on the present state of the law in the light of the defendant's concession of intercourse (Tr. 163-164). However, the sum of the damage testimony is insufficient to support any reasonable man in the conclusion that the plaintiff was hurt in the amount of $15,000. See *Hamden Lodge No. 517, IOOF* v. *The Ohio Fuel Gas Co.* (1934), 127 Ohio St. 469, 482.

Assignment of Error No. I is well taken.

Assignment of Error No. II:

''The trial court made reversible error in allowing the plaintiff to amend his demand for relief in his complaint over objection of counsel, at the time of trial.''

This assignment is governed by Civ. Rule 15(A). This rule both establishes a schedule with conditions governing when pleadings may be amended and invests the trial court with the discretion to allow amendment at any time with the admonition that leave to amend ''shall be freely given when justice so requires.'' It is clear that the trial court had discretion under the aegis of the rule to allow the amendment about which the defendant complains. No abuse of that discretion has been shown.

Assignment of Error No. II lacks merit.

Assignment of Error No. III:

''The trial court. made reversible error in its instructions to the jury as to the amount of compensatory damages.''

The court's understatement of plaintiff's claim caused no apparent harm to the defendant. If anyone should be heard to complain, it should be the plaintiff who makes no point of the matter.

Assignment of Error No. III lacks merit.

Assignment of Error No. IV:

"The trial court made reversible error in that the judge intimidated the jury in the remarks he made to the defendant while on the witness stand."

The record does not support the claim. On its face the record is reasonably clear that during the colloquy involved, the court was trying to clarify a question—*not* to intimidate the witness (cf. Tr. 164-165).

Assignment of Error No. IV lacks merit.

Assignment of Error No. V:

"The trial court made reversible error allowing into evidence material that was irrelevant, immaterial and incompetent."

This assignment attacks the admission of evidence pertaining to the defendant's financial condition.

In an action for criminal conversation proof of intercourse between the defendant and plaintiff's spouse, as in this case, is enough to support at least nominal damages. *Baltrunas* v. *Baubles* (1926), 23 Ohio App. 104, 106. Where there are nominal compensatory damages, *Baltrunas* v. *Baubles, id.,* punitive damages have been held a proper issue in Ohio, see *Arnold* v. *Wylie* (1927), 25 Ohio App. 10, 13;[1] and the financial condition of the defendant is relevant, *Peters* v. *Lake* (1872), 66 Ill. 206, 208-209; *Lee* v. *Hammond* (1902), 114 Wisc. 550, 558, to provide the jury with basis for determining the amount of assessment necessary to punish the defendant and to deter others from comparable conduct— *Arnold* v. *Wylie, id.*

Assignment of Error No. V lacks merit.

Assignment of Error No. VI:

"The verdict of the jury for $5,000.00 punitive dam-

---

[1]The instruction approved in the *Arnold* case stated the law:

" 'If you should find for the plaintiff, by a preponderance of the evidence—that is, if you should find the defendant committed adultery with the wife of the plaintiff, or that he had sexual intercourse with her by force—you would have the right to give what is called punitive or exemplary damages; that is, damages by way of punishment, which may be a sum to deter others from like conduct. Damages, if any, however—and if in your best judgment it is proven that the acts took place—should not be excessive, or beyond the reasonable measure of such damages, and in no event more than is claimed in the petition."

ages was excessive and manifestly against the weight of the evidence.''

When punitive damages are justified the jury has discretion in determining the amount but that amount should not be excessive, cf. *Arnold* v. *Wylie*,[2] *id.*, and it is not limitless, *Allen* v. *Rossi* (Sup. Jud. Ct., 1929), 128 Me. 201, 205-207. In the latter case a general verdict for $6,474.17 in an action for criminal conversation aggravated by alienation of affections plus a separate count for alienation was set aside. Recognizing the difficulties in drawing the line between a permissible and an inordinate amount of damages, ''especially so where the underlying measure is vague'', the court nevertheless concluded that the award transcended a ''reasonable basis in the evidence'', *id.* 206-207.[3] In another instance the Supreme Court of Illinois reversed a verdict of $13,500 for criminal conversation noting that the verdict, which did not differentiate between compensatory and punitive damage, was ''very large'', *Eshelman* v. *Rawalt* (1921), 298 Ill. 192, 198-200. The latter conclusion stemmed from the consideration that the amount far exceeded the punishment for adultery in the criminal code—''a fine of a limited amount or a jail sentence'', *Eshelman* v. *Rawalt, id.* While it appears from the reported decision that the reversal in *Rawalt* was based on the misconduct of counsel for the plaintiff it is clear that the court saw a nexus between that conduct[4] and the size of the verdict which it felt to be tested, although not controlled, by the criminal penalty for comparable conduct.

---

[2]In *Arnold* v. *Wylie* the verdict was for $3,063.33. From all that appears in the case report the amount awarded could have included both compensatory *and* punitive damage since the charge covered both. The report of the case makes no differentiation.

[3]The *Rossi* opinion noted at page 206 the paucity of evidence on the defendant's financial prospects.

[4]''It is the province of the jury to determine the facts, but it is the province and the duty of the courts to see that every litigant has a fair trial in accordance with the law, and it is complained that the verdict, which was very large, was increased and brought about by the conduct of the attorney for the plaintiff on the trial.'' *Eshelman* v. *Rawalt, id.*, 199. ''The verdict obtained by the means employed in this case cannot be permitted to stand,'' *id.* 200.

It is noted that the verdict in the instant case was for criminal conversation only, that the criminal punishment for adultery in Ohio before repeal was not more than $200 and imprisonment not more than 3 months.[5] This suggests an excessiveness in a punitive award of $5,000 and when coupled with the trial court's limitation on proof in mitigation, see Assignment of Error No. VII, indicates that a fresh consideration of punitive damages is in order.

Assignment of Error No. VI is well taken in the limited particulars we have indicated.

Assignment of Error No. VII:

"The trial court committed prejudicial error by excluding evidence in mitigation of damages."

The record evidence seems to indicate that the trial court may have been of two minds about admitting such evidence as was offered in mitigation (*p. e.*, Tr. 36, 82, 124-127). Because this case will be retried, at least on the damage issues, it is noted that evidence of matters which demonstrate the "exact state of the relations between plaintiff and the latter's spouse" are admissble in mitigation, *Madison* v. *Neuburger* (1927), 224 N. Y. S. 461, 464; see also discussion in *McCormick on Damages*, 1935 Edition §112, pp. 411-412. For example, alienation of effections is admissible in aggravation of damage. Necessarily the lack of affections to alienate is admissible in mitigation because it shows the relationship between the spouses, *Swartz* v. *Steele, id.* 48.

On retrial of the damage issues any evidence showing the relationship between the parties prior to the events giving rise to the cause of action should be received. To this limited extent Assignment of Error No. VII is well taken. Reversed in part; affirmed in part and remanded for new trial on the damages and related issues only.

*Judgment affirmed in part and reversed in part.*

KRENZLER, C. J., and JACKSON, J., concur.

---

[5]Ohio Revised Code §2905.08; that section was repealed, effective January 1, 1974, by the new criminal code.